UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: ) | |
| ) | |
| GINA MARIE ANITA VUINI, ) | Case No. 6:11-bk-07559-KSJ |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| GINA MARIE ANITA VUINI, ) | |
| ) | |
| Plaintiff, ) | Adversary No. 6:11-ap-00227-KSJ |
| vs. ) | |
| ) | |
| ZIONS BANK and ACCESS GROUP, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION GRANTING
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Gina Vuini, the debtor and plaintiff in this adversary proceeding, borrowed over $57,000 from defendants to fund her law school education and bar exam review in Florida.[1] She now seeks to discharge her student loans under § 523(a)(8) of the Bankruptcy Code[2] because the private loans are not backed by a government guaranty and because she qualifies for a hardship discharge.[3] Both defendants, Access Group, Inc., and Zions Bank, have filed motions for summary judgment asserting the loans are nondischargeable because the loans were made by non-profit institutions for educational purposes and plaintiff has not proven she is entitled to a

---

[1] Doc. No. 30, Amended Complaint. Plaintiff borrowed $43,200 from defendant Zions Bank (successor in interest to the Illinois Designated Account Purchase Program) and $14,900 in principal from defendant Access Group. The amount of the defendants' claims have increased with deferred interest. Plaintiff also borrowed $58,290.67 in other federally guaranteed student loans. The debtor does not contest the dischargeability of these loans in this adversary proceeding.
[2] All references to the Bankruptcy Code shall be to 11 U.S.C. § 101 *et seq*.
[3] Doc. No. 30.

hardship discharge.[4]  Because plaintiff has not satisfied the requirements of the Brunner Test in the Eleventh Circuit to prove an undue hardship, and, because the loans otherwise qualify for an exception to discharge, the Court will grant both motions for summary judgment.  Plaintiff's student loans payable to the defendants are excepted from discharge.

Plaintiff, a divorced single mother of a four year-old daughter, lives in the Orlando area in a mobile home owned by her parents.[5]  She is well educated; she obtained a bachelor's degree in English from St. Joseph's College in New York where she attended on a full scholarship and graduated with a 3.3 grade point average.[6]  Plaintiff then earned a law degree from Barry University with the help of a partial scholarship.[7]  To fund the remainder of her law school costs, plaintiff took out two federal Stafford loans in the amount of $58,290 and the four private loans at issue in this adversary proceeding, totaling $43,200, from the Illinois Designated Account Purchase Program, a division of the Illinois Student Assistance Commission.[8] Defendant Zions Bank ELT NatEd ("Zions") purchased the private loans on August 26, 2007.[9]  Plaintiff also borrowed $14,090 from defendant Access Group, a private non-profit lender, to cover the expenses of taking a Florida Bar Exam review course.[10]  Although the plaintiff sat for the Florida bar exam five times, she never passed, is not a licensed attorney, and has no future plans to retake the exam.[11]  She could act as a certified paralegal after one year of qualifying legal experience.[12]  Additionally, plaintiff is certified in the State of Florida to teach grades 6 – 12.[13]

Plaintiff's financial situation without question has made it difficult for her to repay all of her student loans.  Her minor child has suffered medical problems, including asthma, ear

---

[4] Doc. Nos. 48 & 53.
[5] Doc. No. 56 at 4. Plaintiff does not pay rent, but pays the monthly community association charges. *Id.*
[6] *Id.* at 61.
[7] *Id.* at 79.
[8] Doc. No. 53 at 8.
[9] *Id.* at 8.
[10] Doc. No. 48 at 1; Doc. No. 56 at 77.
[11] Doc. No. 57 at ¶¶ 8-9.
[12] Doc. No. 56 at 64-65.
[13] Doc. No. 55 Exhibit B; Doc. No. 56 at 10.

infections and speech issues, which have required frequent trips to the doctor and interfered with the ability of the plaintiff to work full time.[14] At the time the motions were filed, plaintiff was employed part-time at Disney World where she earned approximately $9.50 per hour and works an average of 20 hours per week.[15] She also receives $215 in a food stamp stipend and monthly child support of $693 every month.

Plaintiff has only made one $20 payment on her student loans since the loans first came due in 2008.[16] Defendants previously have granted numerous hardship deferrals to plaintiff, but, after years of deferrals, defendants recently demanded plaintiff start making payments on the loans.[17]

On May 19, 2011, plaintiff filed this Chapter 7 bankruptcy case.[18] She then filed this adversary complaint attempting to discharge her student loans due to Access and Zions under Section 523(a)(8) of the Bankruptcy Code. Count I seeks to discharge the debts of defendants Zions and Access Group because these loans are private loans not backed by the government's guarantee and, as such, are not included within the discharge limitations of § 523(a)(8). Alternatively, the plaintiff seeks to discharge the loans because repayment would cause an undue hardship to her. Defendants have brought motions for summary judgment seeking a determination that their loans are nondischargeable.[19]

Under Federal Rules of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where there is genuine issue of any material fact and the moving party is entitled to summary judgment as a matter of law.[20]

---

[14] Doc. No. 56 at 43-46.
[15] *Id.* at 57-60.
[16] *Id.* at 67.
[17] Doc. No. 53 at ¶¶ 9-18.
[18] Doc. No. 1; Case No 11-bk-07559-KSJ
[19] Doc. Nos. 48 and 53. Count I is the only applicable count in this adversary proceeding. Count II is against another defendant, and Count III was dismissed. Doc. Nos. 27 & 46.
[20] Fed. R. Civ. P. 56.

"When a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but . . . must show that there are specific facts demonstrating that there is a genuine issue for trial."[21]  Conclusory allegations by either party, without specific supporting facts, have no probative value.[22]  In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[23] "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[24]

Generally, student loans fall into a class of debts Congress deemed non-dischargeable.[25] The creditor opposing a debtor's request to discharge a student loan debt has the initial burden to prove the debt is an educational loan that would qualify as nondischargeable under § 523(a)(8).[26] Once the creditor has met this burden, the burden shifts to the debtor to prove an undue hardship will result if required to repay the debt.[27] A showing of undue hardship is required to discharge a student loan obligation that otherwise qualifies for protection from discharge.[28]

### **Defendants' loans are excepted from discharge under § 523(a)(8)**

Section 523(a)(8) excepts from discharge the following debts, "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents":

> **(A)(i)** an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

---

[21] *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *In re Pierre*, 198 B.R. 389, 391 (Bankr. S.D. Fla. 1996) (noting the party opposing summary judgment must establish the existence of a genuine issue of material fact and may not rely on mere assertions of disputed fact to defeat the motion).
[22] *Evers v. General Motors Corp.* 770 F.2d 984, 986 (11th Cir. 1985).
[23] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).
[24] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).
[25] 11 U.S.C. § 523(a)(8).
[26] *In re Cox*, 338 F.3d 1238, 1241-43 (11th Cir. 2003); *In re Matthews-Hamad*, 377 B.R. 415, 420 (M.D. Bankr. 2007).
[27] *Id.*
[28] *In re Cox*, 338 at 1243 (11th Cir. 2003) (holding "a debtor cannot obtain a discharge of student loan indebtedness without a finding of "undue hardship.").

> **(ii)** an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> **(B)** any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

Plaintiff first argues this nondischargeability provision should not apply to her student loans because defendants' loans are private and not guaranteed by the government.[29] Plaintiff improperly construes § 523(a)(8) to exclude any loans that were not underwritten or guaranteed by the government directly. Section § 523(a)(8) has been amended several times from its original enactment in 1978, and each time Congress has *increased* its scope to provide additional protections to lenders offering loans of all kinds to students pursuing higher education.[30] At the present time, government-backed student loans, student loans made by non-profit organizations, student loans that would qualify for interest deductions under the tax code, and student loans made in a manner substantially similar to loans made by a governmental or nonprofit lender are all excepted from discharge.[31]

The Access Group loan is not backed by a government guaranty;[32] however, Access Group is a private, non-profit lender who provided educational benefits to plaintiff to study for the Florida bar exam. Access Group has provided sufficient evidence to prove its non-profit status under § 501(c)(3) of the Internal Revenue Code.[33] These documents are not, as plaintiff argues, hearsay.[34] They qualify as business records and are admissible.[35] Furthermore, plaintiff fully acknowledged Access Group's non-profit status and entitlement to protection under §

---

[29] Doc. No. 30 at ¶ 19.
[30] *See In re Micko*, 256 B.R. 210, 216 -217 (Bankr. D. Ariz. 2006) (discussing the legislative history of § 523(a)(8)).
[31] *Id.* (holding that private not-for-profit student loans made via "established procedures substantially similar to a governmental unit or nonprofit lender" also are entitled to relief under § 523(a)(8)).
[32] Doc. No. 48 at 2.
[33] Doc. No. 48, Exhibit A (Restated Certificate of Incorporation of Access Group, indication the corporation is organized and operated exclusively for charitable and educational purposes within the meaning of 501(c)(3)); Exhibit B (Letter from Internal Revenue Code to Access Group, Inc., dated February 14, 2008, confirming Access Group's non-profit status under § 501(c)(3)); Doc. No. 48 (Affidavit of Christopher J. Mulvihill).
[34] Doc. No. 63 at ¶6; Doc. No. 64 at ¶4.
[35] Fed. R. Evid. 806(6).

523(a)(8) when she made the loan. On page 4 of her loan agreement, plaintiff affirms "I acknowledge that my loan is an educational loan and that Access Group loan programs are funded in party by a nonprofit institution, and that my loan is therefore subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code."[36]  Access Group's private, non-profit loan is included within the scope of loans encompassed by the nondischargeability protections of § 523(a)(8).[37]

Similarly, plaintiff has acknowledged Zions' private loans covering law school tuition are "education loan[s] . . . made under a program which is funded in part by a nonprofit organization . . . and as such, [are] not dischargeable in bankruptcy."[38]  These loans were made to plaintiff under the Illinois Designated Account Purchase Program, a division of the Illinois Student Assistance Commission, and later sold to Zions.  Additionally, Zions has provided sworn testimony that the loans are "qualified education loans" under the Internal Revenue Code, potentially excepting them from discharge under § 523(a)(8)(B).[39]

Both Zions and Access's loans are included in the ambit of loans addressed in § 523(a)(8).[40]  Thus, plaintiff's student loans obtained by Zions and Access and incurred to fund her law school education and legal licensing bar exam review course are not excepted from discharge *unless* plaintiff can prove that paying the debt would impose an undue hardship on her and her dependent.

---

[36] Doc. No. 48 Exhibit C at 4 (Section L(9)).
[37] *See In re Pilcher*, 149 B.R. 595, 598 (B.A.P. 9th Cir. 1993) (holding private non-profit lenders are entitled to nondischargeability status under § 523(a)(8)).
[38] Doc. No. 54 Exhibit B, Section V at ¶8, Promissory Note Agreement with original lender National Education, predecessor to Zions.
[39] Doc. No. 54 at ¶6 Affidavit of Tracy Kaufmann, Vice President of National Education Servicing, LLC (stating the loans are qualified education loans under 11 U.S.C. § 523(a)(8)(b) and 26 U.S.C. § 221(d)(1)).
[40] *In re Cox*, 338 F.3d 1238, 1242 (11th Cir. 2003) (citing 11 U.S.C. § 523(a)(8)).

**Plaintiff is not Entitled to an Undue Hardship Exception**

Because defendants have shown the existence and ownership of qualified student loan debt, the burdens shifts to plaintiff to prove an ongoing undue hardship will prevent her from paying back her student loans.  The Eleventh Circuit Court of Appeals adopted the Brunner Test to determine whether a student loan becomes dischargeable because of a borrower's undue hardship.[41]  The Brunner Test is a three part test in which the debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
> (3) that the debtor has made good faith efforts to repay the loans.[42]

A finding of undue hardship is an incredibly high hurdle to overcome.[43]  More than just a "garden variety" of hardship must be found to discharge plaintiff's student loan.[44]

The first prong of the Brunner Test requires a debtor demonstrate she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if she were forced to repay the loans.[45]  Courts may take into consideration a debtor's particular circumstances, including employment income, additional sources of income, expenses, and any available debt restructuring.[46]  A debtor is not required to live in poverty, but may not necessarily maintain her previous standard of living.[47]  A minimal standard of living is demonstrated by modest and reasonable expenses.[48]  Perhaps the most troubling obstacle for

---

[41] *In re Cox*, 338 F.3d at 1238 (adopting the Second Circuit Court of Appeals test in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 19897)).
[42] *Id*.
[43] *Id.* (describing how the bankruptcy laws have evolved over time to limit a debtor's ability to discharge student loan debt).
[44] *In re Brosnan*, 323 B.R. 533, 538 (Bankr. M. D. Fla. 2005).
[45] *In re Cox*, 338 F.3d at 1242.
[46] *In re Matthews-Hamad*, 377 B.R. 415, 421 (Bankr. M.D. Fla. 2007).
[47] *Id.* (citing *Credit Mgmt. Corp. v. Stanley*, 300 B.R. 813, 818 (N. D. Fla. 2003)).
[48] *Id.* (noting that modest expenses do not include new car payments).

plaintiff is the requirement that she demonstrate she has maximized her ability to produce adequate income to pay her living expenses and her student loans.[49]

Plaintiff's statement of financial affairs indicate she earns $821 per month in wages, and, with food stamps and child support, she receives $1,629 of total income each month.[50] Clearly this is not enough to pay the $2,623 she incurs in monthly expenses,[51] nor is it sufficient to pay her law school debts.

Plaintiff, however, also must show that her current income is the maximum income she reasonably can attain. Plaintiff earns only $821 per month working part time and claims she cannot work more hours because she needs to be home to care for her minor child, drive her to doctor appointments, and administer various medications.[52] She also claims that, although she applied for other positions at Disney, she has not been able to obtain better employment because she is limited to part-time work and is not available around the clock, which Disney requires for full-time positions.[53] Lastly, plaintiff claims she would have difficulty working desk jobs that involve typing on a computer because of her carpal tunnel syndrome.[54]

The Court understands the temporary nature of plaintiff's financial hardship and the effect the economic downturn has had on families, especially single parents. However, plaintiff has not demonstrated that this hardship will last indefinitely, or that she has attempted to maximize her earning potential. Plaintiff admits she has not applied for full time employment in the legal field for which she could expect to earn $13 per hour as a paralegal.[55] Plaintiff also admits she has not pursued any type of full-time jobs or teaching positions outside of Disney

---

[49] *Id.* at 538.
[50] Case No. 6:11-bk-7559-KSJ Doc. No. 1, Exhibit I.
[51] Case No. 6:11-bk-7559-KSJ Doc. No. 1, Exhibit J.
[52] Doc. No. 56 at 50-58.
[53] *Id.* at 53.
[54] *Id.* at 88-89.
[55] Doc. No. 56 at 64-65.

since 2009.[56] Although plaintiff may suffer from carpal tunnel syndrome and may not be able to work at a computer full time, she is an educated individual holding advanced degrees in law and English. She is certified to teach. She quickly could qualify as a paralegal. Plaintiff simply has failed to expend *any* effort to use her skills to get a better job, and, as such, has failed to satisfy the first prong of the Brunner Test.

The second prong of the Brunner Test, considered the heart of the dischargeability analysis,[57] requires a debtor to establish not just an inability to pay, "but an inability to pay that is likely to continue for a significant time."[58] Sometimes this distinction, which recognizes the continued benefit of a college or post-graduate education, is described as the difference between a "temporary dire financial situation" and a "certainty of hopelessness."[59] Utter hopelessness can be difficult to prove because it requires a debtor to show she will never reap the benefits of her education or be able to repay her obligations due to factors outside of her control.[60] Courts do not take this factor lightly, and usually look for a debtor to establish the most of grim circumstances, like an irreversible illness or disability, an utter lack of usable job skills, or the responsibility of caring for a large number of dependents.[61]

Plaintiff relies on the argument that she lacks usable job skills to obtain better employment that would enable her to pay her student loan obligations. She points to her multiple failures to pass the Florida bar exam as evidence that she lacks the skills to obtain a better job.[62] However, plaintiff never failed a law school class, and obtained her J.D. because she demonstrated an ability to research, write legal memoranda and briefs, and think critically. Failing to pass the Florida Bar does not invalidate these other skills or her obvious intelligence.

---

[56] *Id.* at 56.
[57] *In re Matthews-Hamad*, 377 B.R. at 421.
[58] *In re Cox*, 338 F.3d at 1242.
[59] *In re Matthews-Hamad*, 377 B.R. at 422.
[60] *Id.*
[61] *In re Matthews Hamad*, 377 B.R. at 422 (citing *In re Johnson,* 299 B.R. 676, 680 (Bankr. M.D. Ga. 2003)).
[62] Doc. No. 30 at ¶ 14.

Plaintiff also suggests she will never be able to find a better paying job with more hours because her minor child had chronic infections and asthma. Being a single parent is not an easy task, and often requires reliance on others to care for a young child. But, plaintiff's situation is not unique, nor is it permanent. Her minor child will soon be old enough to attend school. Additionally, plaintiff has stated the child is growing out of some of her childhood illnesses, which has and will continue to reduce the visits to the doctor.[63] She also testified that she would take full-time employment outside Disney if the opportunity presented itself.[64]

Plaintiff has not met her burden to prove special circumstances exist or that her current state of financial affairs is likely to continue for the indefinite future. She is well educated and was awarded a full undergraduate scholarship and partial law school scholarship. She graduated from an accredited law school, and, despite her inability to pass a challenging licensing exam in Florida, she has not demonstrated a lack of knowledge or inability to work in a legal environment, perhaps as a paralegal instead of a lawyer. Nor does has she demonstrated she lacks the skills necessary to teach secondary education, another area in which she is qualified to work. Her carpal tunnel syndrome may prevent her from working certain jobs, but does not prevent her from working at all.

Plaintiff has failed to show any attempt to maximize her income now or explain why she should not expect a higher paying job in the future. A debtor's current employment in a low paying job without much upside potential alone is not enough to satisfy the second Brunner prong, especially when a debtor voluntarily chooses to remain under-employed in a low-paying field unrelated to her post-graduate education.[65] Therefore, the Court finds Plaintiff has failed to satisfy the requirements of the second prong of the Brunner Test.

---

[63] Doc. No. 56 at 51.
[64] *Id.* at 90-91.
[65] *In re Matthews-Hamad*, 377 B.R at 422.

The third prong of the Brunner Test requires a debtor to show she has made a good faith effort to repay her student loans.[66] A debtor's effort to seek out options to make her repayment less burdensome, such as negotiating a repayment plan with the lender, is an important factor the Court must consider when determining good faith,[67] but it is not determinative.[68] Debtor has not demonstrated she has attempted to repay or renegotiate her debt. She has made one $20 payment since her loans came due over four years ago. Yet, she has been able to afford payments for a brand new vehicle after graduating from law school.[69] Without more evidence, debtor's perfunctory statement that "plaintiff has made a good faith effort to repay all her student loans" is not enough to prove plaintiff's good faith.[70] Plaintiff has failed the third prong of the Brunner Test.

In conclusion, plaintiff's claim fails all three prongs of the Brunner Test. Her status as a single mother is not a unique situation that would constitute an undue hardship and justify discharging her student loan debt. Plaintiff has not shown she has attempted to maximize her income because she has not applied for a better paying full time job outside of Disney since 2009. Her financial situation, while unpleasant, shows no indication that it will persist indefinitely. To qualify for discharge, Plaintiff need not live in poverty, but she must demonstrate a minimal effort to maximize her income and repay her loans, which she has not done in this case.

---

[66] *In re Brunner*, 831 F.2d at 396.
[67] *In re Brosnan*, 323 B.R. at 539; *In re Matthews-Hamad*, 377 B.R. at 423.
[68] *In re Mosley*, 494 F.3d 1320, 1327 (11th Cir. 2007) (holding "while a debtor's effort to negotiate a repayment plan certainly demonstrates good faith, courts have rejected a per se rule that a debtor cannot show good faith here he or she has not [sought alternative payment options].").
[69] Doc. No. 56 at 70-72 (plaintiff testifies that she purchased a brand new Hyundai Santa Fe for $23,170).
[70] Doc. No. 30 Exhibit A at ¶15.

Therefore, plaintiff is not entitled to a discharge of her student loans. A separate final judgment consistent with this memorandum will be entered.

DONE AND ORDERED in Orlando, Florida, on November 14, 2012.

KAREN S. JENNEMANN
United States Bankruptcy Judge